IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANIEL BJORLIN,

    Plaintiff,               No. CIV S-06-1837 LKK DAD P

   vs.

M.T.A. CROW,

    Defendant.          <u>FINDINGS AND RECOMMENDATIONS</u>

                         /

       Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking relief under 42 U.S.C. § 1983. The matter is before the court on defendant Crow's motion for summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed an opposition to the motion and defendant has filed a reply.

**BACKGROUND**

       Plaintiff is proceeding on his original complaint in this case, in which he alleges as follows. On January 6, 2006, after returning to his cell from the administrative segregation exercise yard, plaintiff told Correctional Officer Griffith that he had injured his knee. Plaintiff asked Officer Griffith if he could ask defendant Crow, a Medical Technical Assistant, to take a look at his knee and give him a band-aid. After speaking with Officer Griffith, plaintiff saw defendant Crow and asked her to come to his cell. Defendant Crow allegedly responded "no"

1

1 and told plaintiff to leave her alone.  Plaintiff called defendant Crow again and also called
2 Officer Griffith, explaining to the latter that defendant Crow was refusing to provide him with
3 medical treatment.  Defendant Crow then stopped in front of plaintiff's cell and threw him an
4 ointment packet.  She did not look at his injuries or give him a band-aid.  According to plaintiff,
5 however, when an inmate of a different racial background asked defendant Crow to come to that
6 inmate's cell, defendant Crow stated "no problem."  (Compl. at 5 & Attach.)

7         Plaintiff claims that defendant Crow violated his constitutional right to adequate
8 medical care under the Eighth Amendment.  He also claims that defendant Crow violated his
9 constitutional right to equal protection under the Fourteenth Amendment.  In terms of relief,
10 plaintiff seeks monetary damages.  (Compl. at 5.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

12         Summary judgment is appropriate when it is demonstrated that there exists "no
13 genuine issue as to any material fact and that the moving party is entitled to a judgment as a
14 matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

19 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the
20 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
21 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
22 to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,
23 after adequate time for discovery and upon motion, against a party who fails to make a showing
24 sufficient to establish the existence of an element essential to that party's case, and on which that
25 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof
26 concerning an essential element of the nonmoving party's case necessarily renders all other facts

2

immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

1 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
2 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
3 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
4 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
5 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
6 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
7 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
8 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
9 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

## OTHER APPLICABLE LEGAL STANDARDS

I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

>The Civil Rights Act under which this action was filed provides as follows:
>
>Every person who, under color of [state law] . . . subjects, or causes
>to be subjected, any citizen of the United States . . . to the
>deprivation of any rights, privileges, or immunities secured by the
>Constitution . . . shall be liable to the party injured in an action at
>law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

4

1  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory
2  allegations concerning the involvement of official personnel in civil rights violations are not
3  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).
4  II.  The Eighth Amendment and Inadequate Medical Care
5         The unnecessary and wanton infliction of pain constitutes cruel and unusual
6  punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);
7  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).
8  In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove
9  that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials
10 acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.
11 Seiter, 501 U.S. 294, 298-99 (1991).
12        Where a prisoner's Eighth Amendment claims arise in the context of medical
13 care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence
14 deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth
15 Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need
16 and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,
17 1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133
18 (9th Cir. 1997) (en banc).
19        A medical need is serious "if the failure to treat the prisoner's condition could
20 result in further significant injury or the 'unnecessary and wanton infliction of pain.'"
21 McGuckin, 974 F.2d at 1059 (quoting Estelle v. Gamble, 429 U.S. at 104).  Indications of a
22 serious medical need include "the presence of a medical condition that significantly affects an
23 individual's daily activities."  Id. at 1059-60.  By establishing the existence of a serious medical
24 need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.
25 Farmer v. Brennan, 511 U.S. 825, 834 (1994).
26 /////

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from a delay in providing care, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim.

1  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v.
2  Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir.
3  1981).

III.  The Fourteenth Amendment and Equal Protection

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To state a cognizable claim under the Equal Protection Clause, however, a prisoner "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205, 1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158 F.3d 1022, 1026 (9th Cir. 1998)). "Intentional discrimination means that a defendant acted at least in part *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

IV.  Qualified Immunity

"Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

/////

      Although the court was once required to answer these questions in order, the United States Supreme Court has recently held that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, ___ U.S. ___, ___, 129 S. Ct. 808, 818 (2009). In this regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. Likewise, if a court determines that the right at issue was not clearly established at the time of the defendant's alleged misconduct, the court may end further inquiries concerning qualified immunity at that point without determining whether the allegations in fact make out a statutory or constitutional violation. Pearson, 129 S. Ct. at 818-21.

      In deciding whether the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202). The inquiry must be undertaken in light of the specific context of the case. Saucier, 533 U.S. at 201. Because qualified immunity is an affirmative defense, the burden of proof initially lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant's Statement of Undisputed Facts and Evidence</u>

      The defendant's statement of undisputed facts is supported by citations to declarations signed under penalty of perjury by defendant Crow and High Desert State Prison's Chief Medical Officer, Dr. Swingle. It is also supported by citations to plaintiff's complaint.

      The evidence submitted by the defendant establishes the following. On January 6, 2006, plaintiff skinned his knee. A skinned knee is an abrasion to an area of skin as a result of a

fall. A skinned knee does not significantly affect an individual's activities. An individual can engage in virtually all activities with a skinned knee without being in pain or distress. The proper way to treat a skinned knee is to clean the wound and apply antibiotic ointment to the surface. Bandaging and applying gauze to a wound is optional and not necessary to ensure proper healing of the wound. Depending on the severity of the injury, the wound usually heals faster when it is not covered with a bandage or gauze because exposure to fresh air hastens the healing process. (Def.'s SUDF 3-8 & Ex. B; Pl.'s Compl.)

While in his cell, plaintiff asked defendant Crow to examine his knee and provide him with a band-aid. In response to plaintiff's request, defendant Crow opened the tray slot of plaintiff's cell door and provided him with antibiotic ointment. Based on her limited medical training and knowledge, defendant Crow believed antibiotic ointment constituted sufficient medical treatment for plaintiff's injury. The defendant also relayed plaintiff's request for treatment to medical personnel on duty that day. Plaintiff's injury healed within a few days. He did not suffer any additional complications. (Def.'s SUDF 9-11 & Exs. A, B; Pl.'s Compl.)

According to defendant Crow's declaration, she has never treated any inmate differently based on his race and has never provided a different level of medical care to an inmate based on that inmate's race. In providing medical treatment to inmates housed in the same unit as plaintiff on January 6, 2006, defendant Crow did not treat any inmates differently based on race. Nor did defendant Crow intend to treat plaintiff differently from other inmates based on race. (Def.'s SUDF 12-14 & Exs. A, B; Pl.'s Compl.)

II. Defendant's Arguments

Defense counsel argues that defendant Crow is entitled to summary judgment on each of plaintiff's claims. First, counsel argues that plaintiff's skinned knee does not constitute a serious medical need but rather is a common injury that does not affect an individual's daily activity. Moreover, counsel argues that defendant Crow provided plaintiff with adequate medical care when she gave him antibiotic ointment for his knee and that providing him with a band-aid

was not necessary to ensure proper healing. Counsel contends that to the extent that plaintiff believed defendant Crow should have provided him with a band-aid, he is asserting a mere difference of opinion regarding medical treatment that is insufficient to establish a constitutional violation. Counsel maintains that defendant Crow was not deliberately indifferent to plaintiff's medical needs because she did not fail to act despite having knowledge of a substantial risk of harm to plaintiff. (Def.'s Mem. of P. & A. at 4-6.)

Next, counsel argues that the evidence establishes that defendant Crow did not discriminate against plaintiff because of his membership in a protected class. Counsel notes that plaintiff alleges that defendant Crow refused to examine his skinned knee and provide him with a band-aid but then replied "no problem" when an inmate of another race asked the defendant to come to his cell. Counsel contends, however, that there is no evidence that defendant Crow went to this other inmate's cell or that she examined this other inmate, nor is there any evidence that defendant Crow treated plaintiff differently from any other similarly-situated inmates on January 6, 2006. Moreover, counsel contends that even if defendant Crow somehow treated plaintiff differently from other similarly-situated inmates, there is no evidence that her alleged actions were intentional or purposeful.

Finally, counsel argues that the defendant Crow is entitled to qualified immunity. Counsel reiterates that, based on the evidence in this case, the defendant was not deliberately indifferent to plaintiff's medical needs and did not intentionally discriminate against plaintiff in violation of his constitutional rights. (Def.'s Mem. of P. & A. at 8-9.)

III. Plaintiff's Opposition

In his opposition to defendant's motion for summary, plaintiff argues that defendant Crow failed to provide him with adequate medical care. According to plaintiff, defendant Crow did not see or observe his injury. She refused to follow protocol, did not file any documents, and failed to write any notes in plaintiff's medical file regarding his diagnosis and treatment. Plaintiff contends that the defendant's failure to provide him with necessary medical

care caused him to get an infection later that same week. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3-5.)

Plaintiff also argues that defendant Crow subjected him to racial discrimination. According to plaintiff, the defendant has a long history of discrimination against minority inmates. Plaintiff contends that the defendant's personnel file contains evidence to support his claim in this regard. (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 3, 6-7.)

IV. Defendant's Reply

In reply, defense counsel argues that plaintiff has failed to provide any evidence in support of his argument that defendant Crow provided him with inadequate medical care. For example, according to counsel plaintiff's medical records indicate that any injury he suffered healed within a few days and that he did not suffer any additional complications. In addition, counsel reiterates that negligence or a mere disagreement over appropriate medical treatment is insufficient to establish a constitutional violation. (Def.'s Reply at 3.)

Defense counsel also argues that plaintiff has failed to provide any evidence in support of his claim that defendant Crow discriminated against him. Counsel repeats that there is no evidence before the court indicating that defendant Crow did not treat any of the inmates in plaintiff's housing unit differently based on race. (Def.'s Reply at 4.)

Finally, defense counsel reiterates that the defendant Crow is entitled to qualified immunity because she did not violate plaintiff's constitutional rights under the Eighth Amendment or the Fourteenth Amendment. (Def.'s Reply at 4-5.)

**ANALYSIS**

I. Plaintiff's Eighth Amendment Inadequate Medical Care Claim

Based on the evidence presented by the parties in connection with the pending motion, the undersigned finds that a reasonable juror could not conclude that plaintiff's skinned knee constitutes an objective, serious medical need. See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of

Case 2:06-cv-01837-LKK-DAD   Document 99   Filed 11/10/09   Page 12 of 16

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); see also Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose."). In this case, defendant Crow's evidence establishes that, on January 6, 2006, plaintiff merely skinned his knee. A skinned knee does not significantly affect an individual's activities. Rather, an individual can engage in virtually all activities with a skinned knee without being in significant pain or distress. Moreover, it is undisputed that in response to plaintiff's request for medical attention, defendant Crow provided plaintiff with antibiotic ointment, and within a few days plaintiff's injury healed without complications. (Def.'s Exs. A & B.) Given this evidence, the court finds that defendant Crow has borne the initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the seriousness of plaintiff's medical need, and the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to the objective component of his deliberate indifference claim.

The court has considered plaintiff's opposition to the pending motion for summary judgement as well as the allegations of his complaint. The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to a genuine issue of material fact. Plaintiff does not dispute that, on January 6, 2006, he merely skinned his knee. Although plaintiff contends that he has seen some skinned knees that require stitches, he has provided no evidence suggesting that his skinned knee required anything more than the antibiotic ointment he received. Nor has plaintiff provided any evidence to suggest that the defendant Crow's alleged failure to treat him resulted in or could have resulted in "further significant injury" and the "unnecessary and wanton infliction of pain." See, e.g., McGuckin, 974 F.2d at 1059. Although plaintiff alleges that he suffered an infection later in the week, plaintiff has

12

failed to submit any evidence supporting this contention.  Accordingly, plaintiff has failed to present any evidence establishing that he had a serious medical need, a necessary element of his claim.

Moreover, even if a reasonable juror could conclude that plaintiff's skinned knee constitutes an objective, serious medical need, the court finds that a reasonable juror could not conclude that defendant Crow responded to plaintiff's serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.  In this case, the evidence presented by defendant Crow establishes that she provided plaintiff with antibiotic ointment for his skinned knee and relayed his requests to other medical personnel on duty.  The evidence presented by the defendant establishes that the proper treatment for a skinned knee is to clean the wound and apply antibiotic ointment to the surface.  Bandaging and applying gauze to a wound is optional and not necessary to ensure proper healing of the wound.  Depending on the severity of the injury, the wound usually heals faster when it is not covered with a bandage or gauze because exposure to fresh air hastens the healing process.  Within a few days, plaintiff's skinned knee healed without complications.  (Def.'s Ex. A.)  Given this evidence, the court finds that defendant Crow has borne the initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff, and the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to the subjective component of his deliberate indifference claim.

The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to a genuine issue of material fact in this regard as well.  Plaintiff claims that defendant Crow was deliberately indifferent to his medical needs because she only provided him with an ointment packet and did not examine his knee or provide him with a band-aid.  However, as discussed above, mere differences of opinion between a prisoner and prison medical staff as to the proper course of medical care does not give rise to a § 1983 claim.  Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Fleming v. Lefevere,

423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion."). Here, plaintiff has provided no evidence demonstrating that the course of treatment the defendant chose was medically unacceptable under the circumstances. For example, plaintiff has not submitted any evidence indicating that he sought or needed further medical care for his skinned knee. Jackson, 90 F.3d at 332. Plaintiff has also provided no evidence to show that defendant Crow chose the particular course of treatment in conscious disregard of an excessive risk to plaintiff's health. See, e.g., McGuckin, 974 F.2d at 1060 ("A finding that the defendant's neglect was an 'isolated occurrence' or an 'isolated exception,' . . . militates against a finding of deliberate indifference"). Finally, plaintiff has provided no evidence suggesting that any minimal delay in his medical treatment ultimately caused him harm. See Berry, 39 F.3d at 1057; McGuckin, 974 F.2d at 1059; Wood, 900 F.2d at 1335; Hunt, 865 F.2d at 200; Shapley, 766 F.2d at 407. Accordingly, the court concludes that defendant Crow is entitled to summary judgment in her favor with respect to plaintiff's Eighth Amendment claim.

II. Plaintiff's Fourteenth Amendment Equal Protection Claim

Based on the evidence presented by the parties in connection with the pending motion, the undersigned finds that a reasonable juror could not conclude that defendant Crow discriminated against plaintiff based on race. The evidence presented by defendant Crow establishes that she has never provided a different level of medical care to an inmate based on that inmate's race. The same evidence indicates that in providing medical treatment to inmates housed in plaintiff's unit on January 6, 2006, defendant Crow did not treat any inmates differently based on race, nor did she intend to treat plaintiff differently from other inmates based on race. (Def.'s Ex. A.) Given this evidence, the court finds that defendant Crow has borne the initial responsibility of demonstrating that there is no genuine issue of material fact with respect

/////

to the her treatment of plaintiff, and the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his equal protection claim.

The undersigned finds that plaintiff has failed to submit any evidence establishing a legitimate dispute as to a genuine issue of material fact as to his equal protection claim. Plaintiff alleges that defendant Crow discriminated against him when she refused to provide him with a band-aid and examine his knee but said "no problem" when an inmate of a different racial background asked defendant Crow to come to his cell.  However, plaintiff has provided no evidence suggesting that defendant Crow refused to provide him with a band-aid or examine his knee, or selected a course of treatment because of his race.  See Serrano, 345 F.3d at 1082 ("To avoid summary judgment, [plaintiff] must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of evidence that the decision was racially motivated.") (internal quotations omitted).  Plaintiff merely assumes that any minor difference of treatment that may have occurred between him and any other inmate was based upon his race.  Without evidence, however, plaintiff's assumption is insufficient survive defendant Crow's motion for summary judgment.  See Fed. R. Civ. P. 56(e) (a party opposing a motion for summary judgment "may not merely rely on allegations or denials in its own pleading. . . .").  Accordingly, the court concludes that defendant Crow is entitled to summary judgment in her favor with respect to plaintiff's Equal Protection claim.

In sum, for the reasons discussed above, the court concludes that defendant Crow is entitled to summary judgment on plaintiff's Eighth Amendment inadequate medical care claim and Equal Protection claim.[1]

/////

/////

---

[1] Defendant Crow's argument for qualified immunity is also well-taken.  However, the court need not address it in light of the findings and recommendations herein, recommending that defendant's motion for summary judgment be granted on the substantive merits of plaintiff's constitutional claims.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendant Crow's July 10, 2009 motion for summary judgment (Doc. No. 84) be granted; and

2. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 9, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
bjor1837.57